UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHEZAN SERVICES (PRIVATE) LIMITED, <br> SHEZAN INTERNATIONAL LIMITED, <br> <br> Plaintiffs, <br> <br> v. <br> <br> INTERSHEZ CORPORATION, <br> SHEZAN, LLC, <br> <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) No. 1:25-cv-00358-TWP-TAB <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**ORDER DENYING MOTION FOR DEFAULT JUDGMENT,
GRANTING UNOPPOSED MOTION FOR PRELIMINARY INJUNCTION, AND
DIRECTING FURTHER ACTION**

This matter is before the Court on Plaintiffs Shezan International Limited ("Shezan International") and Shezan Services (Private) Limited's ("Shezan Services") (together, "Plaintiffs") Motion for Preliminary Injunction (Filing No. 36) and Motion for Entry of Default Judgment (Filing No. 70). Plaintiffs are longstanding Pakistani companies that manufacture and sell "SHEZAN" branded food products. They filed this action against their former distributor, Intershez Corporation ("Intershez"), and Intershez's successor, Shezan, LLC (together, "Defendants"), after Defendants registered "SHEZAN" trademarks in the United States without Plaintiffs' knowledge. Plaintiffs allege that Defendants have wrongfully enforced the United States trademarks against Plaintiffs, and Plaintiffs seek declarations that they are the trademarks' rightful owners. Plaintiffs move for a preliminary injunction enjoining Defendants from enforcing the trademarks against Plaintiffs and ordering Defendants to consent to the release of two shipments of goods that were detained by U.S. Customs and Border Protection. Plaintiffs also move for the entry of default judgment against Defendants.

For the reasons stated below, Plaintiffs' Motion for Entry of Default Judgment is **denied as premature**, the Motion for Preliminary Injunction is **granted**, and the parties are **directed** to confer in good faith as to the amount of a bond and, if necessary, submit supplemental position statements as to an appropriate bond amount.

## I. BACKGROUND

Plaintiff Shezan International is a Pakistani company that has sold SHEZAN branded food products bearing a Shezan wordmark and Shezan Logo (together, the "Shezan Marks") in the United States since as early as 1985 (Filing No. 37-11 ¶¶ 4, 9–10, 12). Shezan International sold its products to various distributors until 1999, when it entered into an exclusive Distributorship Agreement with Defendant Intershez (Filing No. 37-4). In 2000, Defendant Intershez registered the Shezan Marks with the U.S. Patent and Trademark Office without Plaintiffs' knowledge (Filing No. 37-1; Filing No. 37-2).

Over the next several years, Plaintiff Shezan International continued to supply products to Defendant Intershez. In June 2008, Defendant Intershez was administratively dissolved. From 2008 to 2023, other persons or entities holding themselves out as Intershez continued purchasing products from Plaintiff Shezan International (Filing No. 37 at 10; Filing No. 37-3). In October 2020, Defendant Shezan, LLC, was formed, and the Shezan Marks were transferred to Shezan, LLC (Filing No. 37-9; Filing No. 33 ¶ 13). Defendants did not inform Plaintiffs of Intershez's dissolution or Shezan, LLC's formation, and Defendants have continued using Intershez's name on product labels, invoices, and trademark filings (Filing No. 37-11 ¶ 16; Filing No. 37-8; Filing No. 37-14 through Filing No. 37-17). In 2021, Shezan, LLC, registered the Shezan Marks with U.S. Customs and Border Protection, again without Plaintiffs' knowledge (Filing No. 33 ¶ 14).

Since at least 2010, Plaintiff Shezan International has worked with distributors other than Defendants (Filing No. 37 at 10–11). In April 2023, Plaintiff Shezan International sent two cargo

2

shipments of products to its other distributor, but Defendants allegedly used their trademark registrations to cause Customs and Border Protection to detain the shipments (Filing No. 33 ¶ 15).

In January 2025, Plaintiffs attempted to register the Shezan Marks themselves, but the Patent and Trademark Office denied their request.[1] A few days after the denial, Plaintiffs initiated this lawsuit seeking declarations that the exclusive Distributorship Agreement has been terminated, that Plaintiff Shezan Services is the rightful owner of the Shezan Marks in the United States, and that the Shezan Marks are unenforceable against Plaintiffs. Seven months later, Plaintiffs filed their Motion for Preliminary Injunction requesting an order enjoining enforcement of the Shezan Marks and ordering Defendants to consent to the release of the detained shipments (Filing No. 36 at 3).

Early in this litigation, Defendants appeared by counsel, filed pleadings, and engaged in discovery, but before they filed a response to the Motion for Preliminary Injunction, defense counsel withdrew (Filing No. 64). The Court gave Defendants until October 8, 2025, to obtain new counsel and extended certain discovery and briefing deadlines (Filing No. 65). However, the Court stated that if new counsel did not appear by October 8, 2025, Plaintiffs' Motion for Preliminary Injunction would be treated as unopposed. *Id.* at 2. No counsel appeared by the October 8, 2025 deadline. On October 20, 2025, Plaintiffs filed their Motion for Default Judgment (Filing No. 70).

Current counsel for Defendants appeared on October 23, 2025, and filed responses to the motions for preliminary injunction and default judgment the next day. In their response briefs, Defendants state that they do not oppose Plaintiffs' request for a preliminary injunction, ask that

---

[1] Request for Extension of Prot., *USPTO Trademark Status & Document Retrieval Case Viewer*, https://tsdr.uspto.gov/documentviewer?caseId=sn79415807&docId=SUSLT20250922170739&linkId=1#docIndex=11&page=1; *Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.*, 298 F.3d 600, 607 (7th Cir. 2002) (taking judicial notice of information from official agency website); (Filing No. 33-1). Plaintiffs' application has been suspended pending this litigation. Suspension Notice, *USPTO Trademark Status & Document Retrieval Case Viewer*, https://tsdr.uspto.gov/documentviewer?caseId=sn79415807&docId=SUSLT20250922170739&linkId=1#docIndex=0&page=1.

3

the injunction be conditioned upon a bond (Filing No. 76), and oppose the Motion for Default Judgment (Filing No. 75).

## II.    DISCUSSION

The Court will first address Plaintiffs' Motion for Entry of Default Judgment before turning to their unopposed Motion for Preliminary Injunction.

### A.    Default Judgment

Plaintiffs move for entry of default judgment under Federal Rules of Civil Procedure 55 and 37. Plaintiffs argue that Defendants failed to obtain counsel by October 8, 2025, and because they cannot proceed *pro se*, default judgment is appropriate (Filing No. 70). This argument is moot now that Defendants have obtained new counsel, but even if not moot, Plaintiffs' request is premature. Prior to obtaining a default judgment under Rule 55(b)(2), there must be a Clerk's entry of default as provided by Rule 55(a). *See C & S Mgmt., LLC v. Superior Canopy Corp.*, No. 1:08-CV-0029, 2013 WL 5291961, at *1 (N.D. Ind. Sept.18, 2013); *see* Fed. R. Civ. P. 55(a). Plaintiffs have not yet sought a Clerk's entry of default, so their request for default judgment is premature.

Plaintiffs also argue that the Court should enter default judgment as a discovery sanction under Rule 37(d)(1)(A)(ii) for Defendants' failure to timely respond to discovery. A discovery sanction of default judgment should be used "only in extreme situations." *Webber v. Eye Corp.*, 721 F.2d 1067, 1069 (7th Cir. 1983). Here, Defendants' failure to timely respond to discovery requests does not warrant default judgment, especially considering that this case is still in its early stages and that at the time Plaintiffs filed their motion, defense counsel had just withdrawn and Defendants' responses were only eight days overdue. It also appears that Plaintiffs made no efforts to resolve this discovery dispute before filing their motion. Indeed, Plaintiffs' hasty request for default judgment appears to violate this Court's Local Rule 37-1, which provides:

4

> Prior to involving the court in any discovery dispute . . . the parties *must confer in a good faith attempt to resolve the dispute.* If any such dispute cannot be resolved in this manner, one or both parties shall *contact the chambers of the assigned Magistrate Judge* to determine whether the Magistrate Judge is available to resolve the discovery dispute by way of telephone conference of other proceeding prior to a party filing a formal discovery motion. . . .
>
> In the event that the discovery dispute is not resolved at the conference, a party may file a motion to compel or other motion raising the dispute. Any motion raising a discovery dispute *must contain a statement setting forth the efforts taken to resolve the dispute . . . . The court may deny any motion raising a discovery dispute that does not contain such a statement.*

S.D. Ind. L.R. 37-1(a) (emphases added). Plaintiffs' noncompliance with Local Rule 37-1 provides an alternative basis for denying Plaintiffs' request for default judgment pursuant to Rule 37.

Plaintiffs' Motion for Default Judgment is **denied as premature**.

**B.    Motion for Preliminary Injunction**

Plaintiffs request a preliminary injunction enjoining Defendants from enforcing the Shezan Marks against Plaintiffs and their customers, and ordering Defendants to consent to the release of the shipments detained by U.S. Customs and Border Protection (Filing No. 36 at 3). Defendants do not oppose the injunction (Filing No. 76 at 1, 4). Plaintiffs' unopposed request for an injunction is therefore **granted**. The parties do dispute, however, whether an injunction bond is required.

Plaintiffs argue that Defendants stopped selling Plaintiffs' goods in 2023, so they "will not be exposed to any risk of loss of sales in the event that the preliminary injunction is granted," and the injunction should issue without bond (Filing No. 37 at 21). Defendants tacitly concede that they no longer sell Plaintiffs' products, but they argue that they could suffer other types of potential damages and that injunction bonds are almost always required (Filing No. 76 at 3). Defendants specifically argue that an improperly entered injunction could damage their reputation and goodwill, cause them to lose licensing or other business opportunities, and increase their legal expenses. *Id.* But Defendants do not offer any evidence as to the amount of damages they might

5

suffer. Instead, Defendants fault Plaintiffs for not suggesting a bond amount. Defendants also request a hearing on the bond amount issue. *Id.* On reply, Plaintiffs argue that Defendants' response is untimely,[2] that Defendants' potential damages are speculative, and that Defendants have failed to carry their burden of proving an appropriate bond amount (Filing No. 77 at 1).

The Court partially agrees with both parties. Defendants are correct that "absent extraordinary circumstances" the Court should grant a bond request. *Reinders Bros., Inc. v. Rain Bird E. Sales Corp.*, 627 F.2d 44, 54 (7th Cir. 1980). Rule 65 creates an "implicit presumption" in favor of a bond. *Coyne-Delany Co., Inc. v. Capital Dev. Bd. of State of Ill.*, 717 F.2d 385, 391 (7th Cir. 1983) (stating that waiver of the bond requirement is "a dispensation narrowly construed in this circuit"). "Normally an injunction bond or equivalent security is essential" because a party "injured by an erroneous preliminary injunction is entitled to be made whole." *Roche Diagnostics Corp. v. Med. Automation Sys., Inc.*, 646 F.3d 424, 428 (7th Cir. 2011). District courts have significant discretion in setting the amount of a bond, but the Seventh Circuit has directed courts to "err on the high side." *Auto Driveway Franchise Sys., LLC v. Auto Driveway Richmond, LLC*, 928 F.3d 670, 679 (7th Cir. 2019); *see Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 456 (7th Cir. 2010) ("[A]n error in the other direction produces irreparable injury, because the damages for an erroneous preliminary injunction cannot exceed the amount of the bond.").

Yet, Plaintiffs are correct that Defendants have not identified any non-speculative damages or an appropriate bond amount. "The burden of establishing the bond amount rests with the party to be restrained, who is in the best position to determine the harm it will suffer from a wrongful restraint." *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 911 (N.D. Ill. 2015); *Builder's*

---

[2] Although no defense counsel appeared by October 8, 2025, the Court's September 18, 2025 Order provided that Defendants' response to the Motion for Preliminary Injunction was due October 24, 2025. Because current defense counsel met that deadline, and because Defendants do not oppose the requested preliminary injunction, the Court considers Defendants' response brief.

*World, Inc. v. Marvin Lumber & Cedar, Inc.*, 482 F. Supp. 2d 1065, 1078 (E.D. Wis. 2007). ("A district court cannot simply set the bond at whatever high number it thinks appropriate; instead, reasons must support the number chosen so that a reviewing court can determine whether such number 'was within the range of options from which one could expect a reasonable trial judge to select.'" (quoting *Gateway E. Ry. Co. v. Terminal R.R. Ass'n of St. Louis*, 35 F.3d 1134, 1141–42 (7th Cir. 1994))).

The Court concludes that a bond is required. However, neither party presents any evidence as to an appropriate bond amount, leaving the Court unable to make an educated guess, much less a reasoned decision. The parties must provide additional information before the Court can determine an appropriate bond amount and issue the requested injunction. Considering the narrow scope of this issue and the strong possibility that the parties will agree on a bond amount, written submissions will suffice, and Defendants' request for a hearing is **denied**.

The parties are **directed** to confer in good faith regarding an appropriate bond amount. It is the Court's preference that the parties agree and file a joint notice of proposed bond amount or a joint proposed preliminary injunction. If the parties' efforts to agree are unsuccessful, then they will be given an opportunity to file supplemental position statements as to the bond amount.

### III. CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Entry of Default Judgment (Filing No. 70) is **DENIED as premature**, Plaintiffs' unopposed Motion for Preliminary Injunction (Filing No. 36) is **GRANTED**. Plaintiff will be required to post a bond as a condition of the injunction.

The parties are **DIRECTED** to confer in good faith regarding an appropriate bond amount and file a joint notice of proposed bond amount or joint proposed preliminary injunction. If the parties are unable to agree on a bond amount, then Defendants shall file a supplemental position

statement on the bond amount by no later than **January 7, 2026**, and Plaintiffs shall respond by **January 12, 2026**. The parties' position statements should not exceed **seven (7) pages**.

Once an appropriate bond amount is determined, the Court will issue the requested preliminary injunction, or the parties' joint proposed preliminary injunction, if one is filed.

**SO ORDERED**.

Date:   12/31/2025

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Matthew S. Compton, Jr.
Adair Myers Stevenson Yagi PLLC
msc@am-law.com

Anne L. Cowgur
Paganelli Law Group
acowgur@paganelligroup.com

Malak Christian Mercho
Mercho Strzynski LLP
chris@msfirm.law

Tarek E. Mercho
Mercho Strzynski LLP
tkmercho@gmail.com